IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JESSICA MARCEAUX, )<br>)<br>**PLAINTIFF,** )<br>)<br>v. )<br>)<br>NATIONAL CREDIT SYSTEMS, INC. )<br>)<br>**DEFENDANT.** )<br>_____) | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED |

## CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Jessica Marceaux, hereinafter designated and referred to as Plaintiff, and brings this her action for violation of the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692, et seq., the Fair Credit Reporting Act, 15 U. S .C. § 1681 et seq., the Georgia Fair Business Practices Act (FBPA), O.C.G.A. § 10-1-393, et seq., miscellaneous relief pursuant to the laws of Georgia and declaratory relief as against National Credit Systems, Inc. hereinafter designated and referred to as "NCS" or simply "Defendant" and for cause respectfully shows as follows:

PARTIES

1.

Plaintiff is a natural person who resides in Columbus, Muscogee County, Georgia and is a "consumer" as defined by 15 U.S.C. § 1692a(3) and allegedly

1

owes a "debt" as defined by 15 U.S.C. § 1692a(5). Plaintiff is also a "consumer" as defined by § 1681a(c) of the FCRA and O.C.G.A. § 392 (a)(6).

2.

Defendant NCS is a Georgia corporation, the principal purpose of whose business is the collection of debts, operating a debt collection agency from its principal place of business or whose corporate citizenship is in the State of Georgia and regularly collects or attempts to collect debts owed or due or asserted to be owed or due another and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

3.

NCS is also a furnisher of information as contemplated by the FCRA § 1681s-2(a) and (b), who regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer. NCS may be served with process through its registered agent C T Corporation System 289 S. Culver Street, Lawrenceville, Gwinnett County, GA, 30046-4805.

JURISDICTION AND VENUE

6.

Jurisdiction of this Court arises under 15 U.S.C. §§ 1681p, 15 U.S.C. §§ 1692k(d), and 28 U.S.C. § 1331.  Declaratory relief is available pursuant to 28 U.S.C. § 2201.  The United States District Court also has supplemental jurisdiction

with regard to Plaintiff's state law claims and under the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. § 1367.

7.

Venue is proper, because Defendant maintains its offices in the Northern District of Georgia.

8.

This is an action brought by a consumer for violations of the FCRA, 15 U.S.C. §§ 1681-1681u, and the FDCPA, 15 U.S.C. §§ 1692 - 1692o, in connection with the attempted collection of a purported debt, that is not collectible from Plaintiff or legally subject to file inclusion with Consumer Reporting Agency (CRA). Plaintiff seeks actual damages, statutory and punitive damages, and to the extent possible, injunctive and declaratory relief.

9.

Plaintiff is a natural person residing in Muscogee County, Georgia.

10.

NCS was, at all times relevant to this Complaint, a company that was engaged in the business of collecting debts alleged to be due another (Brittwood-Thayer, LLC, hereafter "Thayer") in the State of Georgia. Upon knowledge and belief, NCS is a corporate citizen of the State of Georgia.

## REQUEST FOR TRIAL BY JURY

11.

Plaintiff requests a trial by jury.

## REQUEST FOR EXEMPLARY/PUNITIVE DAMAGES

12.

Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against Defendants under the provisions of the FCRA.

## REQUEST FOR COSTS OF LITIGATION AND ATTORNEY'S FEES

13.

Plaintiff respectfully requests that this Honorable Court award Plaintiff her litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation in accordance with the provisions of the FCRA and the FDCPA.

## GENERAL FACTUAL BASIS

14.

A "consumer reporting agency" within this section is an agency which acts for monetary fees, dues or on a cooperative nonprofit basis, which regularly engages in whole or in part in gathering or evaluating information on consumers in

order to distribute such information to third parties engaged in commerce and which uses a facility of interstate commerce to prepare or distribute the reports, *Porter v. Talbot Perkins Children's Services*, S.D.N.Y.1973, 355 F. Supp. 174.

15.

Equifax, Experian and Trans Union are consumer reporting agencies.

16.

Plaintiff's creditworthiness has been repeatedly compromised by the acts and omissions of Defendant in continuing to report a non-viable debt.

17.

Plaintiff was a resident at the Brittwood Apartments in Columbus, Georgia pursuant to a consumer lease requiring, *inter alia,* $917.00 per month rent.

18.

The apartment complex, but not Plaintiff's individual unit, became infested with bed bugs.

19.

Thayer undertook to employ professionals to exterminate the bed bugs and to treat the entire four unit building of which Plaintiff's dwelling unit was a part.

20.

Plaintiff's lease had a bed bug addendum attached that was stated, "You may be required to pay all reasonable costs of cleaning and pest control treatments of your dwelling unit…"

21.

Thayer decided to spread the cost of treatments for another unit's bed bugs over the entire tenant census of the building.

22.

Thus, there were no reasonable costs of treatment of Plaintiff's unit.

23.

Thayer then informed Plaintiff that she was required to pay the bed bug fees and other charges to total $1,610.00 before renewal of her lease in March 2018

24.

Plaintiff vacated the premises February 22, 2018 without paying the wrongful charges.

25.

On August 1, 2018 Defendant sent Plaintiff a dunning notice demanding payment of $4,405 from Plaintiff that she demonstrably did not owe.

26.

Additionally, Defendant told Plaintiff that it had reported the matter to the three major consumer reporting agencies, Equifax, Experian and TransUnion.

27.

Defendant's letter of August 1, 2018 was the first Plaintiff had received in connection with the attempted collection of this purported debt.

28.

Defendant's letter of August 1, 2018 makes no attempt whatever to comport with mandatory disclosures pursuant to 15 U.S.C. § 1692g and 15 U.S.C. § 1692e(11).

29.

Defendant's total omission of the disclosures is a per se violation and Defendant is liable over to Plaintiff for actual damages, statutory damages of $1,000 and attorney's fees and expenses of litigation pursuant to 15 U.S.C. § 1692k(a)(1),(2A) and (3).

30.

Additionally, Defendant's violation of this statute is a violation of O.C.G.A. § 10-1-393, *et seq*., the Georgia Fair Business Practices Act.

31.

Plaintiff has satisfied the ante litem notice requirements of O.C.G.A. § 10-1-399(b) and may seek treble damages under § 10-1-399(c), attorneys fees and costs under § 10-1-399(d) and exemplary damages pursuant to § 10-1-399(a).

32.

Defendant's reporting of this purported debt to consumer reporting agencies, in May of 2018, which may have been initially proper, was no longer proper as reported once in receipt of Plaintiff's written dispute October 1, 2018.

33.

NCS at all times had apparent authority and reported to the consumer reporting agencies that the matter had been charged off and a balance remained on the date of delinquency in May, 2018.

34.

Plaintiff then contacted NCS in an attempt to resolve the matter.

35.

NCS undertook to insist that Plaintiff pay the remaining balance purported to be owed on the account.

36.

Plaintiff learned that her consumer reports published by, at minimum, Experian contained inaccurate information.

37.

Plaintiff disputed an inaccurate account, reported to Equifax, Experian and Trans Union.  Plaintiff's disputes to the credit reporting agencies took place in March, 2019.  NCS attributed to Plaintiff a derogatory account which should not have been attributed to Plaintiff.

38.

In response to Plaintiff's disputes, the consumer reporting agencies, TransUnion and Experian each, pursuant to 15 U.S.C. § 1681i(a), forwarded to NCS notification of Plaintiff's disputes and requested that NCS conduct a reinvestigation, per 15 U.S.C. § 1681s-2.

39.

NCS either failed to conduct such investigation or refused to conduct such investigation of the disputed information and, instead, updated Plaintiff's consumer reports to report false, inaccurate information and attributed same to Plaintiff.

40.

NCS reported such information monthly on a regular cycle in accordance with its subscribership with the consumer reporting agencies.

41.

NCS has failed and refused to review all relevant information provided by and available through the consumer reporting agencies.

42.

NCS was further notified by Plaintiff with regard to her dispute and the inaccuracy of the information and that it was not Plaintiff's dwelling unit that became infested with bed-bugs. NCS nevertheless continued to report such inaccurate and false information regarding Plaintiff.

43.

NCS was required to conduct a reasonable, timely, and more thorough reinvestigation of Plaintiff's disputes and respond to the consumer reporting agencies to whom it subscribed with willful, complete, and relevant information.

44.

NCS violated the mandates of 15 § U.S.C. 1681s-2(b), and Plaintiff has suffered damages as a result of those violations.

45.

NCS willfully violated the mandates of 15 U.S.C. § 1681s-2(b).

46.

Alternatively, NCS negligently violated the mandates of 15 U.S.C. § 1681s-2(b).

47.

NCS likewise violated the mandates of 15 U.S.C. § 1681s-2(a) and such violations form the basis of a negligence per se claim and an intentional tort, per se.

48.

NCS knew or should have known or consciously avoided knowing that the information had repeatedly reported about Plaintiff was false and improperly attributed to Plaintiff.  NCS was further notified by Plaintiff of the errors and her disputes, yet Defendant failed to report such information as disputed to the consumer reporting agencies.

49.

Said information was negative and damaging to Plaintiff.  Plaintiff sustained credit denials repeatedly.  The publication of false consumer reports is evidenced in the inquiry section of the respective credit reports issued about Plaintiff.

50.

NCS is a "user" of credit information and "furnisher" of credit information as discussed in the FCRA.

51.

NCS is a "debt collector" as discussed in the FDCPA.

52.

NCS recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth of the matters reported.

53.

NCS's publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, emotional distress, and mental anguish.

54.

NCS was notified of its false reporting, however, NCS continued to issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate, and false information about Plaintiff.

55.

NCS also breached its various and multiple agreements and contracts with the consumer reporting agencies [and/or their affiliates] [collectively "consumer reporting agencies"], to whom it subscribed, by continuously reporting false credit information about Plaintiff.

56.

NCS was aware that its reporting and activities would [and will] damage Plaintiff and her ability to enjoy life and utilize the credit rating and reputation property rights she secured by honoring her obligations to her creditors.

57.

The consumer reporting agencies maintain subscriber contracts and relationships with NCS separately and individually, under which it is allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

58.

Under the subscriber contracts NCS owes a number of duties, including the duty to report truthful and accurate information about its customers and other consumers, including Plaintiff.

59.

NCS owed duties of reasonable care to Plaintiff.

60.

NCS failed to exercise reasonable care and prudence in each reporting and re-reporting, the handling and reinvestigation of data about Plaintiff, all made the subject of this lawsuit, and consequently caused damaged Plaintiff.

61.

NCS negligently impaired Plaintiff's credit rating and property rights in her credit reputation.

62.

Alternatively, NCS has, with willful intent to injure or maliciously, damaged Plaintiff's property rights in her credit reports and reputation and standing in the community.

63.

NCS recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth of the matters asserted.

64.

NCS's publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, emotional distress, and mental anguish to Plaintiff.

65.

NCS was notified of inaccuracies by Plaintiff, however, NCS continued to issue and/or publish report(s) to third parties which contained inaccurate information about Plaintiff.

66.

NCS has defamed Plaintiff.

67.

Alternatively, NCS has, with willful intent to injure and/or maliciously, defamed Plaintiff.

68.

NCS has invaded Plaintiff's privacy.

69.

Alternatively, NCS has, with willful intent to injure and/or maliciously, invaded Plaintiff's privacy.

70.

NCS has intentionally inflicted humiliation and emotional distress and mental anguish on Plaintiff.

71.

Alternatively, NCS has, with willful intent to injure or maliciously, published such false and inaccurate information and severely damaged the personal and consumer reputation of Plaintiff and caused her to suffer severe humiliation, emotional distress and mental anguish.

72.

NCS has engaged in unfair and deceptive trade and business practices and is liable unto Plaintiff under state laws for those violations.

73.

Alternatively, NCS has, with willful intent to injure or maliciously, engaged in unfair and deceptive trade and business practices and is liable unto Plaintiff under various state laws for those violations.

74.

All of NCS's actions with regard to the infliction of humiliation, distress, mental anguish, anxiety, frustration, vexation, and other general damages were either intentional or in conscious disregard for the rights and sensibilities of Plaintiff.

75.

Plaintiff quantifies the foregoing compensatory damages, for purposes of this complaint, as having value of $7,500 as fair trade for being free of the damaging misconduct of Defendant.

76.

NCS has, with willful intent to injure or maliciously, created the environment that logically published false and inaccurate information and severely

damaged the personal and consumer reputation of Plaintiff and caused her to suffer severe humiliation, emotional distress and mental anguish.

77.

NCS, by policy, has engaged in unfair and deceptive trade and business practices and is liable unto Plaintiff under the FDCPA and FCRA.

78.

Alternatively, NCS has, with willful intent to injure or maliciously, engaged in unfair and deceptive trade and business practices and is liable unto Plaintiff under the FDCPA and FCRA.

79.

All of the actions of NCS with regard to the infliction of humiliation, distress, mental anguish, anxiety, frustration, vexation, and other general damages were either intentional or in conscious or negligent disregard for the rights and sensibilities of Plaintiff.

PRAYERS

Wherefore, Plaintiff respectfully prays as follows:

(a) that Summons issue and Defendant be served as by law provided;

(b) that Plaintiff be awarded judgment for all reasonable damages allowed by law, and all reasonable damages sustained by Plaintiff including, but not limited to, all actual or compensatory, statutory, exemplary, and punitive damages

awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time attempted to repair her credit, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, mental anguish, fear of personal and financial safety and security set herein at $10,000, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid;

(c) that Plaintiff be awarded statutory damages for violation of the FDCPA and FCRA or $1,000 each;

(d) that Plaintiff be awarded actual damages together with treble damages of $30,000 for violation of the GFBPA including compensatory damages, attorney's fees, and expenses of litigation;

(e) that Plaintiff be awarded, most especially, punitive damages, but not double recovery, for Defendant's willful and malicious improper reporting to consumer reporting agencies pursuant to the remedial intent of the Fair Credit Reporting Act.

(f) that all issues triable by jury be tried by a jury;

(g) that all costs of this action be taxed to Defendant; and

(h)  for such other and further relief as unto this Court may seem just and equitable in the premises.

This 1st day of May 2019.

*s/ John W. Roper*
John W. Roper
Georgia Bar No: 614159

The Roper Law Firm
233 12th Street, Suite 602
Columbus, Georgia 31901
(706) 596-5353
Fax: (706) 596-5383
johnroper@roperlaw.com